UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN TIMOTHY FRANKO,** | ) | **CASE NO. 1:07CV547** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **CITY OF CLEVELAND,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #51) for Summary Judgment of the City of Cleveland and the Plaintiff's Motion (ECF DKT #57) for Summary Judgment. For the following reasons, the Motion of Defendant City of Cleveland is granted in part and denied in part; and Plaintiff's Motion is denied.

**I. FACTUAL BACKGROUND**

Plaintiff, John Timothy Franko ("Franko"), is a Cleveland police officer who was involved in an incident on September 30, 2005, which resulted in the fatal shooting of an African-American suspect, Laray Renshaw.

Due to an increase in incidents involving the use of deadly force, and responding to

public and media concerns, the United States Department of Justice ("DOJ"), in approximately 1999, began a review of such incidents and departmental policies and procedures in the City of Cleveland.  The combined effort and dialogue among the City, the DOJ, and the representatives of the police officers' unions culminated in a Policy for the Use of Deadly Force Investigation Team ("UDFIT") which went into effect in early March, 2005.

Pursuant to the Policy, officers involved in UDF incidents are assigned to gym detail until they are cleared to return to work by both the medical doctor and the department psychologist.  In this way, the officers are afforded time to recover, mentally and physically, before returning to active duty; and are separated from the general public while the investigation is conducted.  After the doctors clear the officers to return to duty, they are assigned to restricted duty until the Chief Prosecutor issues a ruling.

Plaintiff alleges the Policy, as he understood it when he became a Cleveland police officer, called for a forty-five-day "cooling off" period in the gym after a shooting.  Defendant maintains a forty-five-day gym assignment may have been a goal; but was never official policy.

After the shooting on September 30, 2005, Franko reported to the gym on October 19, 2005.  He was not cleared by the medical team until February 1, 2006.  On February 13, 2006, Franko was assigned to restricted duty – answering phones and filing in the Traffic Unit.  After several weeks, Franko expressed discontent with this restricted duty and he was returned to the gym.  Franko also took a month of sick leave during this time frame.  On May 15, 2006, the Police Chief returned Franko to unrestricted duty at the Sixth District, since the Chief had no reason to believe there would be a negative decision from the Prosecutor.  On

June 6, 2006, Special Counsel, C. Ellen Connelly, announced a finding that Franko had used justifiable force in the shooting of Laray Renshaw.  Although no criminal charges were ever filed or pursued against him, Franko was not returned to active duty until approximately eight months after the shooting incident.

Count I of the Complaint alleges reverse race discrimination in violation of 42 U.S.C. §1981, 42 U.S.C. 2000e-2(1) (Title VII), and R.C. § 4112.02(A).  Specifically, Franko alleges he was disciplined more harshly than if he were an African-American officer.  Count II alleges Franko was knowingly and purposely deprived of established rights, privileges, and immunities secured by the United States Constitution, in violation of 42 U.S.C. §1983, by virtue of the municipality's longstanding policies and customs.  Count III alleges breach of employment contract, implied and express, under state law.  Franko alleges he was subjected to a form of "unofficial punishment" and was denied opportunities for overtime, secondary employment, and special assignments.

The City contends Franko cannot prove his discrimination claims as a matter of law.  In part, Plaintiff Franko argues that, following the verdict in *Edward P. Lentz v. The City of Cleveland*, No. 1:04CV669 (N.D. Ohio, January 30, 2007), principles of collateral estoppel preclude Defendant City of Cleveland from denying the existence of discriminatory policies and practices.

The City points out that Franko did not file a timely charge with the Equal Employment Opportunities Commission or the Ohio Civil Rights Commission; and thus, he is precluded from pursuing a Title VII action.  *United Air Lines, Inc. v.* Evans, 431 U.S. 553, 555 n.4 (1977).  Franko admits that impediment; but asserts discrimination claims brought

under §1981 and R.C. § 4112.02 are analyzed under the same evidentiary framework as Title VII claims, yet do not require exhaustion of administrative remedies. *Patterson v. McLean Credit Union*, 491 U.S. 164,181 (1989); *Carney v. Cleveland Hts.-Univ. Hts. City Sch. Dist.*, 143 Ohio App.3d 415, 426-427 (8th Dist. 2001). The Title VII claim brought in Count I of Franko's Complaint is dismissed for failure to exhaust administrative remedies. His §1981 and R.C. § 4112.02 claims under Count I remain.

In response to the City's Motion for Summary Judgment, Franko voluntarily abandoned the state law breach of contract claims comprising Count III of his Complaint. (ECF DKT #60, p.15).

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When a motion for summary judgment is properly made and supported" the initial burden shifts to the opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The "mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A fact is material only if its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996). Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 249-250.

**Reverse Race Discrimination**

42 U.S.C. §1981 prohibits intentional race discrimination in the making and enforcing of contracts with public and private actors. Section 101 of the Civil Rights Act of 1991, Pub.

Law No. 102-106, 105 Stat. 1071 (1991), expands the scope of §1981 to encompass racial discrimination during the entire scope of the contractual relationship, including discrimination in the workplace, and is applied prospectively only. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 (1994). Section 102 of the Act allows for compensatory and punitive damages as well as for the right to a jury trial for such claims.

Section 1981 claims are examined under the same analytical framework applicable to Title VII claims. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001). A plaintiff can prove a case of reverse discrimination by (1) offering direct evidence that race was a substantial factor in the employment decision, or by (2) offering circumstantial evidence of discrimination. *Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. at 522. (internal quotations omitted). If the plaintiff presents direct evidence of discrimination, the burden of persuasion shifts to the defendant to show that it would have taken the adverse employment action absent any discriminatory motive. *Id*.

In the alternative, the plaintiff can offer circumstantial evidence of discrimination using the *McDonnell Douglas* burden-shifting paradigm. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this standard, the plaintiff must provide circumstantial evidence from which a jury could draw an inference of discrimination. *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 561 (6th Cir. 2004). The plaintiff bears the burden of establishing a prima facie case of discrimination by the employer with proof he (1) is a member of a

protected group; (2) was subject to an adverse employment decision; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class.  *Id.*

The Sixth Circuit has adapted this four-pronged test to cases of reverse discrimination. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).  "In reverse discrimination cases, the first prong of the *McDonnell Douglas* standard has been interpreted to allow a majority plaintiff to establish a *prima facie* case of intentionally disparate treatment when 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'  The remaining elements of the test are modified to reflect the requirement that the plaintiff demonstrate he was treated differently than other similarly situated employees who were not members of the protected group." *Sutherland*, 344 F.3d at 614; *Murray v. Thistledown Racing Club*, 770 F.2d 63, 67 (1985). (internal citations omitted).  Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Burdine*, 450 U.S. at 253.  If that burden is met, the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext. *Id.*

**Defendant as "unusual employer who discriminates against the majority"**

In its Motion for Summary Judgment, Defendant argues that the City of Cleveland cannot be shown to discriminate against the majority.  At the time of the shooting incident, the Mayor was Jane Campbell, a Caucasian female.[1]  Franko is a Caucasian male.  Most of his

---

[1] The Court notes, however, Mayor Frank Jackson, an African American male, took office in January of 2006, and Plaintiff was retained on restricted duty until at least May of 2006.

-7-

supervisors were Caucasian. The Department, including all sworn officers from the Chief to the training class, numbered 1,602 employees, 65.1% Caucasian.

A reverse discrimination plaintiff can establish the necessary background circumstances by presenting evidence of unlawful consideration of race as a factor in employment decisions in the past. See *Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 256 (6th Cir. 2002) (the evidence "justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely").

In an effort to demonstrate Defendant City of Cleveland is that unusual employer, Plaintiff Franko initially asserts the decision-makers were public officials who were overly sensitive to media attention and public outcry over incidents between white officers and black suspects. In his deposition (ECF DKT 47-2, p. 36), Franko relates the substance of a voice mail he received from the Mayor while he was on restricted duty:

> Mayor Campbell called, she said she was calling to see how I was doing. She said that I was in the eye of the storm at the time. It was more about the elections than about me right now, seeing that my shooting was a couple days before the primaries.

More pointedly, Franko directs the Court's attention to *Edward P. Lentz v. City of Cleveland*, No. 1:04CV669 (N.D. Ohio 2004). In *Lentz*, the jury returned a verdict on January 25, 2007, finding the City of Cleveland intentionally discriminated against a Caucasian police officer, by virtue of an almost two-year reassignment to gym duty pending investigation for use of deadly force against an African American suspect. (Exhibit "D" to Franko's Motion for Summary Judgment, ECF DKT #57-5). The district court's judgment was affirmed, although denial of remittitur was reversed and remanded for calculation of appropriate remittitur or for a retrial on damages, in *Lentz v. City of Cleveland*, No. 07-4385,

2009 WL 1563433 (6th Cir. Jun. 4, 2009).

Since the Sixth Circuit has held a plaintiff's burden under *McDonnell Douglas* is not onerous, *Burdine*, 450 U.S. at 253, the Court finds Franko has met his threshold burden of establishing the City of Cleveland is that unusual employer that discriminates against the majority.

**Adverse employment action**

While broadly asserting Franko cannot prove a prima facie case of reverse race discrimination, the City does not make a clear, independent argument disputing the adverse employment action element.  Yet, the Court remains obliged to address whether Franko has made the required prima facie showing.

> To establish an adverse employment action, a plaintiff must identify a materially adverse change with respect to the terms and conditions of his employment.  *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).  To determine whether an employment action is materially adverse, the Sixth Circuit focuses on five factors: (1) significant changes in responsibility; (2) decreased salary; (3) less distinguished title: (4) material loss in benefits; and (5) other indices that might be unique to a particular situation.  *Id.* at 886.  "Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decision."  *Id.*  Indeed, the reassignment must be more than a mere inconvenience.  *Id.*  However, if the conditions of the reassignment would be objectively intolerable to a reasonable person and thereby amount to a constructive discharge, then it is considered materially adverse.  *Strouss v. Michigan Dept. of Correction*, 250 F.3d 336, 342-43 (6th Cir. 2001).

*Lentz v. City of Cleveland*, 410 F. Supp.2d 673, 684-85 (N.D. Ohio 2006).

On the other hand, the Sixth Circuit has also held that "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action."  *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 803 (6th Cir. 2004)) (emphasis in

original).  See also *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding a police officer suffered no adverse employment action where he was temporarily (late April to July 1994) placed on paid administrative leave during an internal investigation and then returned to his pre-discipline position).  The Fifth Circuit provides some additional helpful commentary on adverse employment actions in the *Breaux* case referenced by the Sixth Circuit panel in *Peltier*.  For example: "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994).  "Transfers can constitute adverse employment actions if they are sufficiently punitive, ... , or if the new job is markedly less prestigious and less interesting than the old one, see *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992)." *Breaux*, 205 F.3d at 157.

Here, Franko was assigned to the gym for approximately eight months, where his responsibilities were significantly reduced.  Further, while on restricted duty, Franko could not earn his traditional overtime nor work secondary employment in the security field as he had been accustomed.  The restricted duty gym assignment imposed by the City of Cleveland upon Officer Franko was more than an inconvenience.  Franko's evidentiary showing on this element, therefore, is sufficient to present to a jury for its determination.

**<u>Qualified for the position</u>**

Plaintiff Franko's qualification for the position of police officer for the City of Cleveland Police Department is undisputed.

**<u>Treated differently than similarly situated employees outside the protected class</u>**

As was outlined previously, pursuant to the City's policy, officers involved in UDF

incidents are assigned to gym detail until they are cleared to return to work by both a medical doctor and the department psychologist.  After the doctors clear the officers to return to duty, they are assigned to restricted duty until the Chief Prosecutor issues a ruling.  Franko alleges he understood the policy called for only a forty-five day "cooling off" period in the gymnasium after a shooting; so, his lengthy restricted assignment was unreasonable and discriminatory when compared to others.

In its Motion, Defendant City contends Franko cannot show he was treated differently because his comparables are not similarly situated.  "To create an inference of disparate treatment, a plaintiff 'must prove that all of the relevant aspects of his employment situation are nearly identical to those of the [black] employees who he alleges were treated more favorably.  The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.'"  *Boggs v. Commonwealth of Kentucky*, 101 F.3d 702 (table) (6th Cir. 1996), quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).  The comparison employees must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).  In the City's view, Franko's comparison examples are not similarly situated.  They served under different decision-makers (police chiefs); were reassigned under difference policies; and possibly were retained on gym detail for distinctly different reasons, such as: lack of medical clearance or officer's request for extended gym duty.

The evidence supplied by Franko, by way of deposition testimony as well as expert

reports, identifies several examples of disparate treatment between black and white officers involved in shooting incidents with black suspects:

1. Officer Reginald Smith, an African American, was involved in a UDF incident in April of 2004. He was assigned to the gym from August 9, 2004 through October 27, 2004, and was returned to regular duty six months before the prosecutor made a ruling.

2. Detective Alvin Gulley, an African American, was involved in a UDF incident in October of 2005. He was injured and off work for a month. Then he was assigned to the gym. He was allowed to return to regular duty per a memo from Commander Margaret Downing six weeks after the suspect was shot. (Downing Depo. at 40-41).

3. Officer John Lundy, an African American, who was involved in a UDF incident on March 23, 2008, spent approximately forty-five days on restricted duty in the gym.

Even considering factual distinctions in these situations, there is a legitimate question for the jury whether it was discriminatory for the City to retain Franko in the gym and/or on restricted duty for eight months, allegedly awaiting the ruling from the Prosecutor, when African American officers involved in shooting incidents with black suspects were returned to active duty much sooner, and even prior to the Prosecutor's ruling.

It should be noted the Sixth Circuit Court of Appeals has expressed concerns over the adapted prima facie elements required of reverse race discrimination plaintiffs:

> Additionally, we note that the "background circumstances" prong, only required of "reverse discrimination" plaintiffs, may impermissibly impose a heightened pleading standard on majority victims of discrimination. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 n. 7 (6th Cir. 1994); *Ulrich v. Exxon Co.*, 824 F.Supp. 677, 683-84 (S.D. Tex. 1993) (collecting cases). In *Pierce*, another panel of this Court stated, "[w]e have serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts." 40

   F.3d at 801 n.7."
*Zambetti*, 314 F.3d at 257.

  In conclusion, in light of these substantial considerations, and recognizing that Plaintiff's burden at this stage is slight, the Court finds Franko has satisfactorily established a prima facie case of race discrimination; and Defendant's Motion for Summary Judgment is denied as to Count I, reverse race discrimination in violation of §1981 and R.C. 4112.02(A).

**Count II – Deprivation of constitutional rights pursuant to municipal policy and custom**

  When a §1983 claim is made against a municipality, the Court must analyze: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the city is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992); *accord Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). The plaintiff must "show[] that the unconstitutional policy or custom existed, that the policy or custom was connected to the county [or other government entity], and that the policy or custom caused his constitutional violation." *Napier v. Madison County, Ky.*, 238 F.3d 739, 743 (6th Cir. 2001). The causal link between the policy and the alleged constitutional violation must be such that the municipality's "deliberate conduct" can be deemed the "moving force" behind the violation. *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). "An act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision-maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441-42 (6th Cir. 2000); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (a "custom" for purposes of liability must "be so permanent and well settled as to constitute a custom or usage with the force of law.");

*Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).

In Count II of his Complaint, Franko seeks to enforce his fundamental right to remain free from racially motivated employment decisions.  In addition to his own experience in late 2005, continuing into 2006, Franko directs the Court's attention to the *Lentz* litigation, which arose out of a shooting incident in 2001.  The experiences of Franko's cited comparables involve the years 2004, 2005, and 2008.  The alleged discriminatory treatment, then, was not isolated; but rather occurred over a significant span of time so that a jury could find a widespread custom, policy or practice deliberately implemented by the City.

The Sixth Circuit cautions against granting summary judgment against a discrimination plaintiff on such elusive questions as an employer's true intent or motivations. *Singfield*, 389 F.3d at 564.  Therefore, the Defendant's Motion for Summary Judgment on Count II of Plaintiff's Complaint is denied.

**Plaintiff's Motion for Summary Judgment on Counts I and II**

On January 22, 2009, Franko moved for summary judgment in his favor on Counts I and II, contending the *Lentz* verdict precludes the City of Cleveland from denying the existence of discriminatory policies and practices, by operation of the offensive collateral estoppel doctrine espoused in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).  The Supreme Court explained, in applying that doctrine, the court "must determine whether a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Id*. at 326.  Noting that collateral estoppel has historically been limited by mutuality of parties, the Supreme Court nevertheless decided:

> We have concluded that the preferable approach for dealing with these
> problems in the federal courts is not to preclude the use of offensive collateral
> estoppel, but to grant trial courts broad discretion to determine when it should
> be applied. The general rule should be that in cases where a plaintiff could
> easily have joined in the earlier action or where, either for the reasons
> discussed above or for other reasons, the application of offensive estoppel
> would be unfair to a defendant, a trial judge should not allow the use of
> offensive collateral estoppel. *Id.* at 327-28.

The *Lentz* jury indeed found a Caucasian police officer suffered discrimination as the result of the City of Cleveland's official policy or custom in 2001. (ECF DKT #57-5). However, the events at issue here occurred in 2005-2006. The decision-makers, i.e., the Mayor, Chief of Police, and Safety Director, are different. The Department of Justice reviewed UDF cases in Cleveland and mandated a policy change in the intervening years. The circumstances of the shootings are distinguishable. Lentz was criminally charged; Franko was not. Unlike Franko, Lentz alleged the City retaliated against him for engaging in protected activity.

The distinctions between the *Lentz* case and the instant litigation give the Court pause. Therefore, to assure fairness to all parties, and to acknowledge the role of a jury, especially where intent and motivation are at issue, the Court declines to apply the doctrine of offensive estoppel and denies Plaintiff's Motion for Summary Judgment in his favor on Counts I and II of his Complaint.

### III. CONCLUSION

For all the foregoing reasons, the Motion for Summary Judgment of the Defendant, City of Cleveland, is denied in part and granted in part. The Title VII claim in Count I is dismissed; Count III is dismissed; and the remainder of Count I and Count II in its entirety remain pending for trial. The Motion for Summary Judgment of the Plaintiff, John Timothy

Franko, on the basis of the application of the offensive collateral estoppel doctrine, is denied.

**IT IS SO ORDERED.**

**DATE: July 16, 2009**

 **S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**